IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:14-CR-44-TAV-DCP |
| JONATHAN RAY, | ) | |
| Defendant. | ) | |

**ORDER OF DETENTION**

This case came before the Court on February 11, 2026, for a detention hearing to determine Defendant's release or detention pending his revocation hearing. *See* 18 U.S.C. § 636(b). Assistant United States Attorney Michael Gilmore appeared on behalf of the Government. Assistant Federal Defender Sarah Olesiuk represented Defendant Jonathan Ray, who was also present.

After serving a term of imprisonment for a 2014 conviction of Hobbs Act Robbery in violation of 18 U.S.C. § 1951, Defendant began his current term of supervised release on August 21, 2024 [Doc. 31 p. 1]. On January 29, 2026, Defendant appeared before the Court on an Amended Petition for Warrant for Offender Under Supervision ("Amended Petition") [*Id.*]. He requested a detention hearing at that time [Doc. 32], which was set for hearing on February 11, 2026, by agreement of by the parties. For the reasons set forth below, the Court finds that Defendant shall be detained pending his revocation proceedings.

I.     ANALYSIS

With respect to the release or detention of persons appearing for an alleged violation of probation or supervised release, the Court shall order that the defendant be detained unless it finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the

safety of others or the community if released. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 32.1(a)(6); *see also United States v. McIntosh*, No. 02–CR–20049–02, 2012 WL 762614, at *1 (E.D. Mich. Mar. 9, 2012) (observing that § 3143(a) "establishes a presumption in favor of detention that is rebuttable only upon the Defendant showing, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to any other person or the community"). The defendant bears the burden of showing that he will not flee or pose a danger to others or the community. Fed. R. Crim. P. 32.1(a)(6). In evaluating whether Defendant presents a danger or a flight risk, the Court has looked to the § 3142(g) factors as a framework for its analysis. *See United States v. Tolbert*, Nos. 3:09-CR-56 &3:10-CR-30, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017) (instructing that § 3142 provides a framework to analyze release pending revocation hearing). As discussed below, those factors weigh in favor of Defendant's detention pending revocation proceedings.

The first factor concerns the nature and circumstances of the charged violations. *See* 18 U.S.C. § 3242(g)(1). Here, the nature and circumstances of the violations for which the revocation of Defendant's supervised release is sought involve controlled substances and driving under the influence. The Amended Petition alleges that on October 8, 2025, Defendant was arrested by Knoxville Police Department ("KPD") for the offenses of driving under the influence, in violation of T.C.A. § 55-10-401, a Class A misdemeanor; possession or casual exchange of methamphetamine, in violation of T.C.A. § 39-17-434(b), a Class A misdemeanor; and simple possession and casual exchange of fentanyl in violation of T.C.A. § 39-17-418, a Class A misdemeanor [Doc. 31]. The Amended Petition reflects that officers were dispatched for a call about concerning a male passed out in a black Nissan Rogue while parked at the pumps of a gas station [*Id.* at 2]. Defendant was found unconscious in the driver's seat, and while the vehicle was not running, the key fob used to start the vehicle was located in the passenger seat [*Id.*]. A small

baggie containing a crystal-like substance believed to be methamphetamine was observed in the center console area [*Id.*]. After waking Defendant, officers removed him from the vehicle, and detained him, noting that he appeared lethargic during this process [*Id.*]. Defendant admitted that the baggie contained methamphetamine and stated that he might have taken something [*Id.*]. A subsequent vehicle search revealed another baggie containing approximately 0.60 grams of a white powdery substance believed to be fentanyl; the baggie containing the crystal-like substance had a field weight of approximately 0.25 grams [*Id.*]. Defendant stated that he had consumed two airplane bottles of fireball whiskey after work [*Id.*]. He alleged that while at the gas station, his cousin had stopped by and given him the baggies which he denied using [*Id.*]. The officers put Defendant through standardized field sobriety tests and determined under the totality of the circumstances that he was impaired and arrested him [*Id.*]. Defendant was advised of his Miranda rights but waived them and stated that he had taken half of what he believed to be a Xanax bar but later said it may have been a pressed fentanyl bar [*Id.*].

Shortly thereafter, on October 28, 2025, Defendant was arrested for manufacturing, delivering, selling and possessing methamphetamine, a Schedule II drug, in violation of T.C.A. § 39-17-417 (c)(1), a Class B felony, and driving under the influence by allowing, in violation of T.C.A. § 55-10-401, a Class A misdemeanor [*Id.* at 3]. The arresting officer had been informed that a black Nissan Rogue had been located at a convenience store and that the owner of the vehicle, Defendant, was known to have an outstanding warrant from the U.S. Marshall Service [*Id.*]. Upon approaching the vehicle, officers made contact with Defendant in the passenger seat and another male individual in the driver's seat [*Id.*]. As the officer approached the driver's door, he observed what appeared to be a large assortment of currency in the driver's lap that he was attempting to put in his pockets [*Id.*]. Both were removed from the vehicle and detained [*Id.*]. Defendant consented to a search of the vehicle, stating everything inside belonged to him and noting there

3

were syringes inside the vehicle [*Id.* at 3–4]. Defendant was also searched and found to have a small amount of narcotics on his person [*Id.* at 4]. A search of the vehicle revealed a black case on the driver area floorboard, which contained a digital scale with residue, plastic baggies, a plastic bag with a crystal substance confirmed to be methamphetamine weighing 70.9 grams, and a plastic bag with a crystal substance believed to be suboxone weighing 3.1 grams [*Id.*]. The officers also found several plastic baggies confirmed to contain cocaine (2.5 grams), fentanyl (8.0 grams), an additional two baggies of fentanyl (0.9 grams and 0.3 grams), a baggie containing orange tablets believed to be suboxone (3.1 grams), one naloxone strip, and an additional bag of methamphetamine (1.0 gram) [*Id.*]. Based on the large amount of narcotics with a large digital scale and many unused plastic baggies in the same container, the officers believed that the narcotics were being packaged for resale and that Defendant and the individual were in possession with intent to sell/deliver narcotics [*Id.*].

After Defendant and the individual were taken into custody, they were transported to University of Tennessee Medical Center because they were both extremely intoxicated and stated they both used narcotics [*Id.*]. Defendant stated that the vehicle was his, which was confirmed by prior reports [*Id.*]. Because Defendant had allowed the individual to operate his vehicle while the individual was under the influence, Defendant was charged with the offense of driving under the influence by allowing [*Id.*]. The Court finds that the nature and circumstances of Defendant's alleged violations weigh in favor of detention.

The Court next examines the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(g)(2); *see also United States v. Stone*, 608 F.3d 948 (6th Cir. 2010) (observing that factor (g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt"); *United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018,

at *8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)).

Here, the Government focused on Defendant's dangerousness to the community. It argued that drug trafficking is extremely dangerous and submitted that even if Defendant was just a buyer, it still indicates his involvement in that network. The Government highlighted the fact that Defendant had an individual in his vehicle who was involved in drug trafficking and stressed that 70 grams of fentanyl carries a sentence of ten years in federal prison. The Government emphasized that this was Defendant's third DUI incident involving someone behind the wheel in an extremely intoxicated state on controlled substances and alcohol and submitted that this demonstrates Defendant's escalating behavior.[1] The Court notes that Defendant's most recent DUI arrests occurred within merely twenty days of one another and both involved the operation of a motor vehicle under the influence of drugs or other substances. Furthermore, Defendant's repeated drug use necessitates the purchasing and possession of drugs, increasing Defendant's dangerousness to the community. The Court, therefore, finds the weight of the evidence of Defendant's dangerousness to the community to be great.

As for the third factor, the Court considers Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A). The Government submitted that Defendant has a lengthy criminal history. The Amended Petition reflects that Defendant has engaged in crime and violent behavior to support his drug use. His arrests include theft of property over $500 in 2002, burglary of a vehicle in 2006, attempted robbery in 2011, aggravated robbery in 2014, and several traffic offenses [Doc. 31 p. 6]. *See Tolbert*, 2017 WL 6003075, at *4 (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the

---

[1] As detailed below, the first DUI incident occurred on November 14, 2024, approximately three months after Defendant's supervised release term commenced [*See* Doc. 29].

5

Case 3:14-cr-00044-TAV-DCP   Document 40   Filed 02/19/26   Page 5 of 8   PageID #: 168

latter will typically weigh less heavily in favor of detention"); *United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that judges may "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances). The Government highlighted that in one of these robberies, Defendant held a gun to the victim and was later accused of firing shots at the victim [Doc. 31 p. 6]. Further, within just months after his supervised release commenced, Defendant had been arrested for aggravated burglary, DUI, and driving while license suspended [*Id.* at 3]. These charges were ultimately resolved with Defendant convicted only of the reduced charge of reckless driving [*Id.*]. On February 7, 2025, the Court approved a modification of conditions to add a special condition, requiring Defendant to perform 40 hours of community service, in response to this incident and subsequent conviction [Doc. 29]. At the hearing, it was noted that to date, Defendant has failed to complete or show proof of progress towards the completion of his community service [*See* Doc. 31 p. 3]. Based on Defendant's criminal history and failure to comply with his special conditions of release, Defendant's history and characteristics weigh in favor of detention. *See United States v. Sykes*, 453 F. Supp. 3d 1011, 1017 (E.D. Mich. Apr. 13, 2020) ("Given his past criminal conduct . . . and apparent disregard for the terms of his probation, [the defendant's] history and characteristics weigh strongly in favor of detention."), *aff'd*, 2020 WL 4036213 (6th Cir. July 15, 2020).

Finally, under 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Court finds Defendant poses a danger to the community due to his involvement in possessing and using fentanyl and other drugs. *See United States v. Morgan*, 657 F. Supp. 3d 976, 983 (E.D. Mich. 2023) ("Society as a whole is the victim when illegal drugs are being distributed in its communities." (quoting *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008))). Defendant's continued drug use while on supervised release gives the Court no confidence he would abide by

6

any conditions this Court would impose. *See United States v. Pacheco*, No. 3:21-CR-00022, 2021 WL 5979531, at *1 (E.D. Ky. Dec. 17, 2021) ("[C]ondition effectiveness inherently hinges on a defendant's predicted good faith compliance."). While recognizing that Defendant dutifully reported the initial arrest to his probation officer on October 8, 2025, this is offset by the fact that Defendant was arrested only twenty-days later, again for controlled substances and driving under the influence by allowing. Given Defendant's arrests for drug possession and driving under the influence, the Court finds Defendant presents a danger to the community.

Defendant submitted that since his arrest on October 28, 2025, he has remained incarcerated and has taken steps to remedy his past behavior, such as enrolling in an intensive drug treatment program for the past sixty-days. Defendant proposed a release on conditions into a multi-week treatment program through Comprehensive Community Services, Inc. ("CCS"). He averred that he had a bed date for February 13, 2026. Defendant provided a letter from CCS confirming the available bed date and referenced that it noted an aftercare plan would be provided for him while in residential treatment that would meet any recommendations set forth by the Court and/or probation. Defendant further submitted that he would have a job with Knoxville Perkins Packing, a moving company, if he were to be released. When asked by the Court about the duration of the treatment program, Defendant responded that while not certain, it ranged from twenty-one to twenty-eight days, which was confirmed by United States Probation Officer Nicholas P. Dongarra, who was present at the hearing. Defendant noted that CCS does not have half-way homes or transitional living, but that they work with individuals to make sure there are suitable conditions for release. In response to further questioning by the Court, Defendant clarified that the release plan was not something that would be decided until the end of the treatment program and that the moving company primarily engaged in residential moves.

While the Court commends Defendant for taking important steps to address his drug problem, his proposed conditions do not satisfy the Court. Again, the Court observes that Defendant's compliance issues began shortly after his supervised release commenced and the modification of conditions appears to not have deterred him from engaging in dangerous behavior that has escalated. These facts indicate to the Court that Defendant cannot be constrained by the release conditions placed on him, to his own peril and the peril of those around him and cause the Court to question whether Defendant would comply with the requirements of the proposed treatment program. Accordingly, the Court finds that Defendant Ray has failed to carry his burden of showing by clear and convincing evidence that he is not a danger to the community. Defendant is **ORDERED DETAINED** pending his revocation hearing.

For the reasons discussed herein, the Court **ORDERS** as follows:

(1) Defendant Ray is **ORDERED DETAINED** pending his revocation hearing.

(2) Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(3) Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

(4) On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

8

Case 3:14-cr-00044-TAV-DCP   Document 40   Filed 02/19/26   Page 8 of 8   PageID #: 171